IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| THOMAS CLARKE,<br><br>    Plaintiff,<br><br>    vs.<br><br>MEGAN J. BRENNAN, Postmaster General, United States Postal Service,<br><br>    Defendant. | MEMORANDUM DECISION & ORDER<br><br>Case No. 2:15cv00005-DBP<br><br>Magistrate Judge Dustin B. Pead |

### INTRODUCTION

The parties in this case have consented to United States Magistrate Judge Dustin B. Pead conducting all proceedings, including entry of final judgment, with appeal to the United States Court of Appeals for the Tenth Circuit (ECF No. 9); *See* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73.

Plaintiff Thomas Clarke (Plaintiff or Clarke) alleges his employer, the United States Postal Service (Defendant or Postal Service), discriminated against him in violation of the Rehabilitation Act, 29 U.S.C. 791 *et seq.* ("Rehab Act"), and retaliated against him in violation of Title VII when it put Clarke on paid administrative leave for approximately 30 days while he underwent a fitness for duty examination (FFDE) in August of 2012. Currently pending before the court is the Postal Service's motion for summary judgment on both of Clarke's claims (ECF No. 15). Clarke concedes summary judgment is appropriate on his retaliation claim but argues it

is not appropriate on his Rehabilitation Act claim.[1] For the reasons set forth herein, the court disagrees and grants summary judgment in favor of the Postal Service on Mr. Clarke's remaining claim.

## UNDISPUTED MATERIAL FACTS[2]

Clarke is a mail processing clerk at the Postal Service's Provo East Bay facility.[3] Plaintiff has been with the Postal Service as both a non-career employee and a career employee for approximately sixteen years.[4] In 2012, Clarke's first line supervisor was Bert Anderson, and the Postmaster for the Provo facility was Rick Brandon.[5]

On July 25, 2012, the Postal Service's Office of Inspector General (OIG) received an anonymous tip regarding Clarke via the OIG hotline.[6] The tipster reported Clarke had commented that he thought the Aurora, Colorado theater shooting was "so cool", and that he had once threatened to slit another employee's throat.[7] The hotline tip was ultimately forwarded to

---

[1] Accordingly, the court dismisses Mr. Clarke's second cause of action for retaliation as undisputed (ECF No. 3).

[2] Clarke does not dispute any of the Postal Service's material facts. Thus, the relevant facts in this opinion are drawn from the Plaintiff's opening brief. *See Clark v. Summit Cnty. Sheriff*, 508 F. Supp. 2d 929, 932 (D. Utah 2007).

[3] *Deposition of Thomas Clark*, 7:3-15, Defendant's Exhibit A (ECF No. 15-1).

[4] *Id.* at 7:16-8:16.

[5] *Affidavit of Rick Brandon,* USA 141-152, Defendant's Exhibit B (ECF No. 15-1); *Affidavit of Bert Anderson*, USA 169-175, Defendants' Exhibit C (ECF No. 15-1).

[6] *Memorandum of Threat Assessment Team Activities*, USA 214-216, Defendant's Exhibit D (ECF No. 15-1); *Affidavit of Stephen Sherwood and Jared Bingham,* USA 212-213, Defendant's Exhibit E (ECF No. 15-1).

[7] *Id.*

the Postal Service's Inspector in Salt Lake City, Utah.[8] Upon receipt of the tip, the Postal Service assembled a Threat Assessment Team (TAT) as authorized under Postal Service policy.[9]

After discussion, the TAT assigned the alleged threat a risk score of 2.1/3.5.[10] It was decided that Postmaster Brandon would gather additional information from the employees and the Inspector Service would interview Clarke in order to assess his state of mind and determine whether he posed a risk to himself or others.

The TAT reconvened on August 2, 2012.[11] At that time, Postmaster Brandon reported that he had collected written statements, and all employees interviewed had considered reporting Clarke's behavior. The employees referenced Clarke's history of bizarre behavior, a fixation on bombs and his anger toward his coworkers and others. In light of those interviews, the TAT agreed that a fitness-for-duty (FFD) examination was appropriate, as allowed under Postal Service policy. Postmaster Brandon requested the FFD examination on August 2, 2012, and the Postal Inspectors interviewed Clarke that afternoon.

The purpose of a Postal Service FFD examination is to ascertain whether an employee is medically capable of meeting job requirements.[12] Under Postal Service policy, "[m]anagement may request a fitness-for-duty examination and repeat examinations as necessary to safeguard

---

[8] *Id.*

[9] *Threat Assessment Team Guide*, USA 961-1001, Defendant's Exhibit F (ECF No. 15-1).

[10] *Memorandum of Threat Assessment Team Activities*, USA 214-216, Defendant's Exhibit D (ECF No. 15-1).

[11] *Id.*

[12] *Management Instruction, Fitness For Duty Examinations,* EL 860-2000-7, Defendant's Exhibit H (ECF No. 15-1).

the employee and coworkers when there is concern about an employee's ability to perform his or her job, based on the observations of a supervisor, manager, or medical personnel."[13] FFD examinations "are always performed by Postal Service physicians, medical providers contracted by the Postal Service, or fee-for-service medical providers or consultants identified by the Postal Service."[14] A psychiatric examination "is not under usual circumstances requested without a prior, general fitness-for-duty examination."[15] Moreover, "[a]s a result of an initial FFD examination, the examining physician may determine that there is a need for additional evaluation concerning the employee's mental status."[16] If necessary, under Postal Service policies, an employee may be required to submit to a mental status evaluation performed by a board-certified psychiatrist in consultation with the Postal Service's associate or senior area medical director.[17] Appropriate reasons for a psychiatric examination referral include: an assessment of the possibility that psychiatric conditions exist, a finding that a level of dangerousness exists, and a need to determine the ability of the employee to perform the job, with or without accommodation.[18]

Postal Inspectors Jared Bingham and Steve Sherwood interviewed Clarke at the Provo facility on the afternoon of August 2, 2012.[19] After the interview, the Inspectors concluded that Clarke was not a likely threat to others, but were concerned that he was a threat to himself. Of

---

[13] *Id.* at 1.

[14] *Id*. at 2.

[15] *Id.* at 8.

[16] *Id.*

[17] *Id.*

[18] *Id.* at 9.

[19] *Affidavit of Stephen Sherwood and Jared Bingham,* USA 212 Defendant's Exhibit E (ECF No. 15-1).

particular concern was Clarke's statement, "I'm going to lose my job. Then my car. Then I won't be able to pay my mortgage, so then I'll burn my house down, and then I'll just be a corpse."[20] As a result, Clarke was placed on emergency administrative leave and directed to undergo a FFD examination before returning to work.[21] While on administrative leave, Clarke continued to receive his full regular pay.[22]

Clarke was scheduled for a FFD examination with Thomas Schulman, M.D. on August 6, 2012.[23] On that day, Dr. Schulman's office provided a verbal report to Joyce Halterman, the Postal Service's Occupational Health Nurse Administrator recommending a psychiatric evaluation for Clarke prior to his return to work.[24] Thereafter, on August 10, 2012, Clarke was directed to report to Jeffrey Kovnick, M.D., for a psychiatric FFD examination.[25] An appointment was scheduled for August 14, 2012. After the appointment, Dr. Kovnick provided a comprehensive report to the Postal Service on August 30, 2012.[26] In the report, Dr. Kovnick determined that Clarke was capable of returning to work full-time and concluded that he was not

---

[20] *Memorandum of Threat Assessment Team Activities*, USA 215, Defendant's Exhibit D (ECF No. 15-1).

[21] *Affidavit of Rick Brandon*, USA 141-152, Defendant's Exhibit B (ECF No. 15-1); *Letter to Thomas Clarke,* USA 723 Defendant's Exhibit I (ECF No. 23).

[22] *Deposition of Thomas Clarke*, 41:7-11, 42:25-44:14, Defendant's Exhibit A (ECF No. 15-1).

[23] *Letter To Thomas Clarke*, USA 723, Defendant's Exhibit I (ECF No. 23).

[24] *Referral To Dr. Schulman*, Defendant's Exhibit J (ECF No. 23).

[25] USA 742 Defendant's Exhibit K (ECF No. 23).

[26] *Report of Dr. Kovnick*, USA 731-741, Defendant's Exhibit L (ECF No. 23).

an immediate risk to himself or others.[27] Clarke was cleared to return to work on August 30, 2012, and he returned to work full-time on August 31, 2012.[28]

Clarke sought EEO counseling regarding this incident on August 27, 2012.[29] Plaintiff alleged Rick Brandon, Stephen Sherwood, and Jared Bingham were the officials responsible for the alleged discrimination. Clarke filed a formal complaint of discrimination regarding the August 2, 2012 incident on November 28, 2012.[30] Following denial of his claim, he timely filed the instant district court complaint.

## STANDARD OF REVIEW

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); *McGeshick v. Prinicipi*, 357 F.3d 1146, 1149 (10th Cir. 2004). One of the principal purposes of summary judgment is to identify and dispose of factually unsupported claims and defenses. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Thus, summary judgment is appropriate where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id*. at 322. Once the moving party has demonstrated the absence of a dispute of material fact, the burden shifts to the non-moving party to go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." *Id*. at 324; *see also*

---

[27] *Id.*

[28] USA 143, Defendant's Exhibit B (ECF No. 15-1).

[29] *EEO Informal Complaint*, USA 74-44, Defendant's Exhibit M (ECF No. 23).

[30] *EEO Formal Complaint*, USA 60-64 Defendant's Exhibit N (ECF No. 23).

*Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998). To meet this burden, the nonmoving party must come forward with admissible evidence. Fed. R. Civ. P. 56(c); *Alder*, 144 F.3d at 671.

## ANALYSIS

The Rehabilitation Act bars employment discrimination due to an individual's disability and provides that the standards used to determine if a violation has occurred shall be those applied under Title I of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12111 *et seq*. *See* 29 U.S.C. §791(f); *Krishnapillai v. Donahoe*, No. 09-cv-1022 (NGG) (SMG), 2013 WL 5423724, at *18 (E.D.N.Y. Sept. 26, 2013).

Under section 12112(d)(4)(A) of the ADA, post-hiring demands for medical examinations can only be made where shown to be "job-related and consistent with business necessity." *See Gajda v. Manhattan & Bronx Surface Transit Operating Auth.*, 396 F.3d 187, 188 (2d Cir. 2005). Further, the ADA permits inquiries "into the ability of an employee to perform job-related functions," 42 U.S.C. § 12112(d)(4)(B), and the employer need not show "that a fitness for duty examination is the only way of achieving a business necessity, but only that the examination or inquiry must be a reasonably effective method of achieving the employer's goal." *Krishnapillai*, 2013 WL 5423724, at *18. The "business necessity" standard may be met even before an employee's work performance declines if there is significant evidence that could cause a reasonable person to inquire as to whether an employee is capable of performing his job. *Brownfield v. City of Yakima*, 612 F.3d 1140, 1146 (9th Cir. 2010); *Watson v. City of Miami Beach*, 177 F.3d 932, 935-36 (11th Cir. 1999) (FFDE of a police officer who

displayed unusually defensive and antagonistic behavior towards his co-workers and supervisors, but whose job performance was otherwise satisfactory, was job related and consistent with business necessity); *Mickens v. Polk County Sch. Bd.*, 430 F. Supp. 2d 1265, 1279 (M.D. Fla. 2006) ("[a]s a matter of law, a school board's psychological examination of an employee is both job-related and consistent with business necessity if that employee exhibits even mild signs of paranoid or agitated behavior that causes the school administration to question the employee's ability to perform essential job duties.").

Courts "will readily find a business necessity if an employer can demonstrate that a medical examination or inquiry is necessary to determine whether the employee can perform job-related duties when the employer can identify legitimate, non-discriminatory reasons to doubt the employee's capacity to perform his or her duties." *Krishnapillai*, 2013 WL 5423724, at *18 (*quoting Conroy v. New York State Dep't of Corr. Servs.*, 333 F.3d 88, 98 (2d Cir. 2003)). An examination is justified when the employer has reasonable belief based on objective evidence that a medical condition will impair an employee's ability to perform essential job functions or that the employee will pose a threat due to a medical condition. *See Coffman v. Indianapolis Fire Dep't*, 578 F.3d 559, 565 (7th Cir. 2009); *Paystrup v. Benson*, No. 2:13-cv-00016-DB, 2015 WL 506602, at *9 (D. Utah Feb. 6, 2015) ("The Tenth Circuit has made it clear that subjecting an employee to a psychological examination can be vital for understanding an employer's ADA obligations to that employee."). An employee's ability to handle reasonably necessary stress and work with others is an essential function of any position. *Owusu-Ansah v. Coca-Cola Co.*, 715

F.3d 1306,1311-12 (11th Cir. 2013); *see also Domingo v. Donahoe*, No. C13-04151 CRB, 2015 WL 1738345, at *7 (N.D. Cal. April 13, 2015).

In this case, the Postal Service had a reasonable and objective concern regarding Clarke's risk to himself and others. In light of the complaints from co-workers and statements suggesting a threat of self-harm it was reasonable for Defendant to have concerns about Mr. Clarke. *See Kroka v. City of Chicago,* 203 F.3d 507, 515 (7th Cir. 2000) (holding "where inquiries into the psychiatric health of an employee are job related and reflect a concern with the safety of employee, the employer may. . . require that the employee undergo a physical examination designed to determine his ability to work."); *Owusu-Ansa,* at 715 F.3d at 1312 ("an employer can lawfully require a psychiatric/psychological fitness-for-duty evaluation under § 12112(d)(4)(A) if it has information suggesting that an employee is unstable and may pose a danger to others."). When the original tip was called in, the Postal Service assembled a TAT, conducted a thorough investigation (including interviews of coworkers and Clarke himself) and ultimately determined a FFD exam was appropriate to ensure that Clarke could perform the essential functions of handling the stress of his job and dealing with his coworkers. There is no evidence that the Postal Service's investigation was unreasonable under the circumstances or was somehow not targeted to address a real, objective concern for Clarke's mental health in his working environment.

Further, the FFD procedure in this case was an effective and efficient method for ensuring the safety of Clarke and his coworkers in light of the anonymous tip. *Krishnapillai*, 2013 WL 5423724, at *18. Clarke was on paid administrative leave for approximately 30 days and was brought back to work the day after the Postal Service received Dr. Kovnick's report


clearing him to return to work. In light of the investigation and the clear indication that the majority of Clarke's stress was work-related, the Postal Service's course of conduct in placing Clarke on administrative leave while obtaining a medical opinion that Clarke was not a threat to himself or others was reasonable.  As such, the decision to seek an FFD exam of Clarke did not violate the Rehabilitation Act.

## CONCLUSION

For the foregoing reasons, the Court hereby grants summary judgment in favor of the Postal Service on all counts in Clarke's complaint pursuant to Federal Rule of Civil Procedure 56 (ECF No. 15).

Dated, this 17th day of October, 2016.

Dustin B. Pead
U.S. Magistrate Judge